**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------
 ROBERT VAN ECHAUTE,

                        Plaintiff,

                                                Case Number:
                -against-                       6:09-cv-01071 (NAM/GHL)


LAW OFFICE OF THOMAS LANDIS, ESQ.,

                        Defendant.
-----------------------------------------------------------------


# MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR
# <u>AN AWARD OF ATTORNEY'S FEES</u>


Submitted By:

Sergei Lemberg
LEMBERG & ASSOCIATES L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
*Attorneys for Plaintiff*

# Table of Contents

**Introduction** ................................................................................................................1

**Plaintiff's Entitlement To Recover**
**His Reasonable Attorney's Fees Is Statutorily Mandated** ........................................2

**Attorney's Fees Should Be Calculated Based**
**Upon The Presumptively Reasonable Fee Approach** ................................................3

**The Fees Requested By Plaintiff Are Reasonable** ....................................................5

    All the Work Performed was Reasonable Required under the Circumstances...................5

    Plaintiff's Counsels' Hourly Rates are Reasonable ............................................6

    Plaintiff is Entitled to an Award of Fees for Work Done
    in Connection with this Petition for Attorneys' Fees..........................................8

**Conclusion** ................................................................................................................8

Plaintiff Robert Van Echaute submits this Memorandum of Law in Support of his Motion for an Award of Attorney's Fees.  Plaintiff's contemporaneous billing records, the Affidavit of Sergei Lemberg, Esq., are appended herein as Exhibits A, and B respectively.

## INTRODUCTION

Plaintiff, Robert Van Echaute, initiated this suit for damages on account of Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. ("FDCPA"), New York General Business Law ("NYGBL") § 601 and NYGBL §349.   In his complaint, Plaintiff alleged the Defendant, which is not licensed to conduct business in the State of New York, engaged in a campaign of harassment in its attempts to collect a ten (10) year old American Express credit card debt.  Defendant also threatened to file legal action against the Plaintiff even though the Defendant is not licensed to practice law in the State of New York.

On March 26, 2010, a conference with the Court was held at which, among other things, pretrial deadlines were established and the facts pertaining to the case were further discussed. After the conference, on April 21, 2010, attorneys for the Defendant offered to have judgment entered against it[1], which the Plaintiff accepted on April 22, 2010.

The Offer of Judgment included Plaintiff's costs accrued to April 21, 2010.  Plaintiff submits this memorandum in support of his motion for Plaintiff's attorney's fees pursuant to the fee-shifting provision of the FDCPA 15 U.S.C. § 1692(k)(a)(3).

---

[1] A copy of Defendant's Offer of Judgment dated April 21, 2010, is submitted herewith as Exhibit C.

**POINT I**

**PLAINTIFF'S ENTITLEMENT TO RECOVER
HIS REASONABLE ATTORNEY'S
FEES IS STATUTORILY MANDATED**

As the successful party in this action, the Plaintiff is entitled to recover his reasonable

attorney's fees:

> A consumer who brings a successful FDCPA lawsuit can recover 'the
> costs of the action, together with a reasonable attorney's fee as determined by
> the court.' 15 U.S.C. § 1692k(a)(3).  Where a plaintiff prevails, whether or
> not he is entitled to an award of actual or statutory damages, he should be
> awarded costs and reasonable attorney's fees in amounts to be fixed in the
> discretion of the court. Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d
> 22, 28 (2d Cir.1989); Emanuel v. American Credit Exch., 870 F.2d 805, 809
> (2d Cir.1989).

Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir.  1998); *see also* Baruch v. Healthcare

Receivable Mgmt., Inc., 2007 WL 3232090, at *4 (E.D.N.Y., Oct. 29, 2007) ("The FDCPA

requires the payment of costs and reasonable attorney's fees to a successful plaintiff")[2]; *see also*

Delta Air Lines, Inc. v. August, 450 U.S. 346, 363-364 (1981) (party accepting an offer of

judgment deemed the prevailing party).

The award of attorney's fees to successful litigants under the FDCPA plays a critical role

in making consumer rights actions viable.  By definition, these cases are brought by individual

consumers who could not undertake the cost of federal litigation.  The FDCPA would have little,

if any, practical impact upon the consumer debt collection industry if consumers remained

economically unable to avail themselves of the law.  Congress therefore expressly provided for

an award of reasonable attorney's fees to successful plaintiffs.

---

[2] All decisions exclusively reported on computerized databases that are relied on by the Plaintiff in this
memorandum are included in Exhibit E.

**POINT II**

**ATTORNEY'S FEES SHOULD BE CALCULATED
BASED UPON THE
<u>PRESUMPTIVELY REASONABLE FEE APPROACH</u>**

In the Court of the Circuit, reasonable attorney's fees are determined using the "presumptively reasonable fee" approach. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 190 (2d Cir.  2007).  In <u>Arbor Hill</u>, the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time."  <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir.  2009).  In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir.  1974) (which considered twelve specific factors to arrive at the "reasonable fee").   <u>Arbor Hill</u>, *supra* at 114. "Relying on the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" <u>Simmons</u>, *supra* at 174.

District courts within the Second Circuit are now required to determine the "reasonable hourly rate," considering all case-specific variables which have been historically identified as relevant to the reasonableness of an attorney's hourly rate. <u>Arbor Hill</u>, *supra* at 117.   The Court must then use the "reasonable hourly rate" to calculate a "presumptively reasonable fee." <u>*Id.*</u>  The resulting "presumptively reasonable fee" is that fee which "a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." <u>*Id.*</u> at 112, 118.

To arrive at that fee, district courts are generally guided by the twelve <u>Johnson</u> factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Johnson v. Georgia Highway Express, Inc.</u>, *supra* at 717-719.   In addition, a "critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 152 (2d Cir.  2008) (citations and quotations omitted).  Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from association with the case. <u>Arbor Hill</u>, *supra* at 119.

The presumptively reasonable fee approach was recently applied by the Northern District of New York in <u>Scott v. Hand</u>, 2010 WL 1507016 (N.D.N.Y.  Apr. 10, 2010).  There, this Court "determin[ed] the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multipl[ied] the two figures together to obtain a presumptively reasonable fee award." <u>*Id.*</u> at *1 (*quoting* <u>Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC</u>, 497 F.3d 133, 141 (2d Cir.  2007)).

In the calculation of "reasonableness [ ], the Court is presumed to 'use [ ] the hourly rates employed by the district in which the reviewing court sits.'" <u>*Id.*</u> at *2 (*quoting* <u>Arbor Hill</u>, *supra* at 120).  However, courts "may apply an "out-of-district rate" over this presumption if it is clear

"that a reasonable, paying client would have paid those higher rates." <u>Id.</u> at *2 (*quoting* <u>Simmons</u>, *supra* at 174).

**POINT III**

**THE FEES REQUESTED BY
<u>PLAINTIFF ARE REASONABLE</u>**

A party seeking attorneys' fees "must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1154 (2d Cir. 1983); *see* <u>McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91, 98 (2d Cir. 2006) (*citing* <u>Carey</u> with approval).

Plaintiff's counsel has attached the contemporaneous billing and expense records, along with a supporting affidavit. These records show that plaintiff's counsel spent 13.6 hours in connection with this case.

**I   <u>All the Work Performed was Reasonably Required under the Circumstances</u>**

The time expended on the Plaintiff's behalf was required and necessary to prosecute his claim. Client communication, drafting of initial pleadings, and settlement discussions accounted for a large part of Plaintiff's counsel's investment of time and resources – an expenditure necessary to all cases. Although Plaintiff's counsel made every effort to settle this matter before the initial conference, it was only after appearing for the initial conference that the Defendant filed the Offer of Judgment.

All work done in this case was needed to meet counsel's duty to represent the Plaintiff diligently and competently. Nevertheless, counsel filed, prosecuted and brought this matter past the case management conference with a reasonable expenditure of time and resources. There is

no "fluff" in counsel's time records, such as lengthy computer research into tangential matters, or unnecessary duplications.

It is worthwhile to highlight the consumer achieved the highest degree of success, receiving an offer of judgment of $2,500.00, greater than the statutory penalty of $1,000.00.

## II  Plaintiff's Counsels' Hourly Rates are Reasonable

Plaintiff's counsel seeks hourly rates between $175.00 and $400.00 per hour for approximately 13.6 hours of work for a total amount of $4,271.50  In determining what constitutes a "reasonable hourly rate," the court should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir.  1998) (*quoting* Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). The court may "rely in part on the judge's own knowledge of private firm hourly rates in the community." Miele v. N.Y. State Teamsters Conf. Pens. & Retirement Fund, 831 F.2d 407, 409 (2d Cir.  1987). The relevant community to which the court should look is "deemed to be district wide." Luessenhop v. Clinton County, N.Y., 558 F. Supp. 2d. 247, 258 (N.D.N.Y.  2008) (*quoting* Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir.  1983)).

However, as Northern District of New York noted, out-of-district rates may be applied if a reasonable client would have paid higher rates.  Scott v. Hand, *supra* at *2.  Although not binding, Plaintiff directs the Court to the recent decision of District Judge Joseph L. Tauro sitting in the District Court in Massachusetts awarding the undersigned $10,385.00 in attorneys' fees in

a similar FDCPA case.[2]  Finding the undersigned to be "an active and experienced lawyer in consumer matters," the court granted his hourly rate of $350.00.

The Plaintiff is requesting rates which "[are] reasonable, and [ ] in line with approved rates in other recent FDCPA cases." Overcash v. United Abstract Group, Inc., 549 F. Supp. 2d 193, 197 ( N.D.N.Y.  2008) (approving rate of $250.00); *see also* Baruch, *supra* (fee of $350.00 per hour deemed reasonable in FDCPA case) (*as cited in* Overcash, *supra* at 197); *see also* Rodriguez v. Pressler & Pressler, LLP, 2009 WL 689056 (E.D.N.Y.,  Mar. 16, 2009) (award of $450.00 per hour to attorney in FDCPA case deemed reasonable); *see also* Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 WL 3681138 (E.D.N.Y.,  Dec. 11, 2006) (hourly rate of $420.00 to FDCPA attorney deemed reasonable).

Plaintiff's counsel seeks an hourly rate of $400.00 for Attorneys Sergei Lemberg, $380 for Susan Schneiderman, and $275 for Jody Burton.  Sergei Lemberg, Esq., is the founder and principal of Lemberg & Associates, L.L.C., a consumer protection law firm.  Mr. Lemberg's Affidavit is attached herein as Exhibit A.  Mr. Lemberg is a graduate of the University of Pennsylvania with extensive consumer law experience and years of experience practicing law.  Susan Schneiderman, Esq., is a senior associate attorney at Lemberg & Associates.  Ms. Schneiderman is a graduate of Cardozo Law School and has been litigating within the State of New York for over twenty-five (25) years.

Additionally, Jody Burton, Esq., an associate attorney at Lemberg & Associates assisted in the case.  Although not admitted to practice in New York, Ms. Burton is admitted to practice in Connecticut, the District of Columbia, and Pennsylvania, and practices consumer law as a

---

[2]  A copy of the April 28, 2010, decision of District Judge Joseph L. Tauro in Nelson v. Hecker, Civ. Act. No. 09-10513-JLT, is attached as Exhibit D.

substantial part of her work duties. Ms. Burton's hourly rate is $275. Consistent with Plaintiff's

counsel's firm billing practice, paralegal time has been billed at $175.00 per hour.

**III  Plaintiff is Entitled to an Award of Fees for Work Done in Connection with this Petition**
    **for Attorneys' Fees**

Time spent on the plaintiff's fee application is compensable.  A party who is awarded

fees is entitled to fees for time spent recovering fees via a fee application and related

proceedings. Commissioner, INS v. Jean, 496 U.S. 154, 110 S. Ct. 2316 (1990).  Plaintiff's

submissions include time expended on preparation of his application for fees and supporting

documentation, including this memorandum.  If additional time is required to be expended after

this submission, the Plaintiff will submit a supplemental declaration.

<u>**CONCLUSION**</u>

Plaintiff submits that the fee application is reasonable in time expended and amount

requested.  Plaintiff's attorneys respectfully submit that, for all the above reasons, the Court

should award all of the requested attorney's fees and costs.


May 3, 2010                                  Respectfully submitted:
                                             Robert Van Echaute
                                             PLAINTIFF

                                             By /s/ Sergei Lemberg _____
                                             Sergei Lemberg
                                             LEMBERG & ASSOCIATES L.L.C.
                                             1100 Summer Street, 3rd Floor
                                             Stamford, CT 06905
                                             Telephone: (203) 653-2250
                                             Facsimile:  (203) 653-3424
                                             *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**THIS IS TO CERTIFY** that on May 3, 2010, a copy of the foregoing memorandum in support of motion for attorney's fees and costs was filed with the clerk of the Court via the Court's ECF/CM system which sent notice of such filing to the following.

Kenneth L. Gellhaus
McNamee, Lochner Law Firm
677 Broadway
Albany, New York 12207-2503

/s/ Sergei Lemberg
Sergei Lemberg

# Exhibit A

# Lemberg & Associates LLC

1100 Summer Street
Stamford, CT  06905
(203) 653-2250

Statement as of April 30, 2010
Statement No. 0

Robert Van Echaute
314 Fourth Ave
Frankfort, NY 13340

1534-001:  Van Echaute v. Law Office of Thomas Landis

| **Professional Fees** | | | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 7/14/2009 | SL | Interview client re facts of case (.4); input into Client Management System (.2). | 0.6000 | 400.00 | 240.00 |
| 9/15/2009 | SL | Research Def. based on facts from client (.7); draft complaint (1.2). | 1.9000 | 400.00 | 760.00 |
| 1/6/2010 | SL | Email to L.Zessman re adjournment of R.16 conference. | 0.1000 | 400.00 | 40.00 |
| 2/3/2010 | JB | Spoke to Lemberg, Lembergasked to make a demand on his behalf. | 0.1000 | 275.00 | 27.50 |
| 2/3/2010 | VH | Van Exchaute Consent to Extension.pdf . | 0.1000 | 175.00 | 17.50 |
| 2/11/2010 | JB | Call w/Ken Gellhaus - Lemberg agreed on answer extension; discussed demand. | 0.2000 | 275.00 | 55.00 |
| 2/22/2010 | JB | Call w/Ken Gellhaus on Lemberg's behalf - CMC 2/23 @ 10:30am - Ken will call court to postpone since pties agreed to ext to anw & not filed yet. | 0.2000 | 275.00 | 55.00 |
| 2/22/2010 | JB | Email from K.Gellhause re adjournment. | 0.1000 | 275.00 | 27.50 |
| 2/23/2010 | JB | SL approved adjourned date. Emailed Ken. | 0.1000 | 275.00 | 27.50 |
| 2/26/2010 | JB | Email from K.Gellhause re adjournment per Lemberg. | 0.1000 | 275.00 | 27.50 |
| 3/8/2010 | JB | Offer email from K.Gellhouse (.1); conveyed to Lemberg who spoke with client - rejected (.3) . | 0.4000 | 275.00 | 110.00 |
| 3/8/2010 | SL | Draft/Review R.16 report & transmit same to O/C (.6). | 0.6000 | 400.00 | 240.00 |
| 3/9/2010 | JB | Call w/Ken Gellhaus; conveyed Lemberg's position re support for position that attorney review must be meaningful (.3). | 0.3000 | 275.00 | 82.50 |
| 3/12/2010 | JB | Reviewed exh - letter addressed to wrong pl - emailed EG. | 0.1000 | 275.00 | 27.50 |
| 3/15/2010 | SL | Reviewed copy of Attny. Landis' "license to collect" (.1); research re cases on point (1.6); email K.Gellhouse with position that license to collect does not mean letters need not be reviewed (.3). | 2.0000 | 400.00 | 800.00 |
| 3/23/2010 | JB | Mess w/Gellhaus sec'y for him to call back | 0.1000 | 275.00 | 27.50 |

**Lemberg & Associates LLC**

| | | | | | |
|---|---|---|---|---|---|
| | | re: status of negotiations. | | | |
| 3/23/2010 | JB | Phone tag w/Gellhaus. | 0.1000 | 275.00 | 27.50 |
| 3/23/2010 | JB | Call w/Gellhaus - client hasn't responded yet. SS will handle CMC - call to Ken. | 0.1000 | 275.00 | 27.50 |
| 3/23/2010 | JB | Emailed SS Gellhaus cell phone to initial call for CMC. | 0.1000 | 275.00 | 27.50 |
| 3/24/2010 | JB | SL asked to speak with Gellhaus - offered $2,500, countered w/$4,250 - he will get back to me before CMC. | 0.1000 | 275.00 | 27.50 |
| 3/26/2010 | SS | Participate in initial scheduling conference. | 0.3000 | 380.00 | 114.00 |
| 4/2/2010 | SL | Review rules regarding consent to Mag. Lowe (.2); speak to client re consent to magistrate (.2); email K.Gellhouse re same (.1). | 0.1000 | 400.00 | 40.00 |
| 4/22/2010 | SL | Review caselaw on R.68 offers referencing fees (.5); satisfied that unless OJ includes fees they are excluded and accepted OJ subject to fee application (.4). | 0.9000 | 400.00 | 360.00 |
| 4/27/2010 | EG | Drafted memo and researched cases on Westlaw. | 1.1000 | 175.00 | 192.50 |
| 4/29/2010 | SL | Reviewed motion for fees drafted by EG. | 0.7000 | 400.00 | 280.00 |
| 4/29/2010 | SL | Reviewed motion for fees. | 0.3000 | 400.00 | 120.00 |
| 4/30/2010 | EG | Worked on memo... found cases, drafted and discussed with Steve. | 2.5000 | 175.00 | 437.50 |
| 4/30/2010 | EG | Lemberg affidavit - Van Echaute.docx. | 0.3000 | 175.00 | 52.50 |
| | | | | Sub-total Fees: | 4,271.50 |

### Rate Summary

| | | | |
|---|---|---|---|
| Jody Burton | 2.1000 hours at $ | 275.00/hr | 577.50 |
| Ernest Guadiana | 3.9000 hours at $ | 175.00/hr | 682.50 |
| Vlad Hirnyk | 0.1000 hours at $ | 175.00/hr | 17.50 |
| Sergei Lemberg | 7.2000 hours at $ | 400.00/hr | 2,880.00 |
| Susan Schneiderman | 0.3000 hours at $ | 380.00/hr | 114.00 |
| Total hours: | 13.6000 | | |

| | |
|---|---|
| Total Current Billing: | 4,271.50 |
| Previous Balance Due: | 0.00 |
| Total Payments: | 0.00 |
| **Total Now Due:** | **4,271.50** |

# Exhibit B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------
ROBERT VAN ECHAUTE,

        Plaintiff,

        -against-

LAW OFFICE OF THOMAS LANDIS, ESQ.,

        Defendant.
-------------------------------------------------------------------

Case Number:
6:09-cv-01071 (NAM/GHL)

**AFFIDAVIT OF SERGEI LEMBERG ESQ.**
**IN SUPPORT OF PLAINTIFF'S APPLICATION**
**FOR AN AWARD OF ATTORNEYS' FEES**

| | |
|---|---|
| **STATE OF CONNECTICUT** | ) |
| | ) ss.: |
| **COUNTY OF FAIRFIELD** | ) |

    **SERGEI LEMBERG**, being first duly sworn, deposes and says:

    1.    I am the founder, principal, sole member and manager of Lemberg & Associates, L.L.C., a Connecticut limited liability company organized for the practice of law (the "Firm"). My Firm's New York office is located at 300 International Drive, Suite 100, Williamsville, New York 14221. My Firm represents the Plaintiff, Robert Van Echaute, in the above-entitled action. I have personal knowledge of the information contained in this affidavit and could testify to such if called to do so.

    2.    I am an attorney licensed to practice law before all of the state courts and federal District Courts within New York, Connecticut and Massachusetts. I became a member of the New York and Massachusetts State Bars in 2002. I became a member of the Connecticut State Bar in 2005.

3.      I am filing my contemporaneous billing and expense records in support of the Plaintiff's Motion for Attorney's Fees.   They are a true and accurate record of the work done and expenses incurred in connection with this case.

4.      Mine and my firm's practice focuses on consumer protection litigation in both state and federal courts.   I have practiced as a consumer law attorney since 2005.   I have successfully represented thousands of plaintiffs in FDCPA actions.

5.      My usual hourly billing rate is $400, which is reflective of my expertise in the field.  I am informed and believe that this hourly rate is commensurate with the rates generally charged by attorneys in consumer protection cases in the State of New York and elsewhere with similar experience and expertise.  I also note that while the rate is slightly higher than rates typical in the Northern District of New York, I believe that the service we provide and the expertise and efficiency we bring to the table more than justifies this increase.

6.      My firm employs a Senior Associate, Susan Schneiderman.  Ms. Schneiderman's time is billed at the rate of $380/hour.  Junior associates are billed at rates which range from $200 - $320, dependent upon the attorney's level of experience.  We employ paralegals whose time is billed at $150 - $180 per hour, also depending upon the experience of the individual performing the work.  I am informed and believe that these fees are reasonable.

7.      I first interviewed the Plaintiff, Robert Van Echaute, in August, 2009, regarding the events underlying this action. As a result of that interview, we were retained by Mr. Van Echaute and began prosecuting this action on his behalf.

8.      I personally drafted the Complaint filed with the Court and all documents related to Plaintiff's demands.  I also reviewed all pleadings and other documents filed by defendant's counsel, formulated appropriate responses where necessary, communicated with counsel

regarding the case and generally followed the progress of this matter.  Although I was not part of the case management conference, I oversaw the communications of Ms. Schneiderman and Ms. Burton with the Defense counsel.[1]

9.      In attempts to avoid a protracted litigation and the needless accumulation of attorney's fees, I attempted to settle this matter on numerous occasions with opposing counsel. However, it was not until after the case management conference that the Defendant offered to have judgment against it.

10.      Overall, the time and expense involved in taking this case to trial represent a substantial investment of time and resources by my firm on behalf of the Plaintiff.

WHEREFORE, Plaintiff respectfully requests an award of  $4,217.50 on account of time which I spent working on his case, together with fees incurred by other professionals within the Firm.

_____
Sergei Lemberg

Subscribed and sworn to
before me this _3_ day
of May, 2010

_Volodymyr Hirnyk_
_____
Notary Public or Commissioner of Deeds

_Commissioner of the Superior Court_

---

[1] Ms. Burton is not licensed to practice law in New York, but was asked by me several times to communicate with the Defendant's counsel in this matter since I was preoccupied with others on those days.

# Exhibit C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT VAN ECHAUTE

Plaintiff,

-against-

LAW OFFICE OF THOMAS LANDIS, ESQ.,

Defendant.

**OFFER OF JUDGMENT**

Docket #6:09-cv-01071-
NAM-GHL

TO:   SERGEI LEMBERG, ESQ.
      LEMBERG & ASSOCIATES, LLC
      1100 Summer Street, Fl. 3
      Stamford, CT  06905

Law Office of Thomas Landis, defendant in the above-entitled adversary

proceeding, hereby offers to allow judgment to be taken against it by the plaintiff for the

sum of $2,500.00, including costs accrued to this date by plaintiff herein.  This offer is

made pursuant to Rule 68 of the Federal Rules of Civil Procedure.  It is not to be

construed either as an admission that the defendant is liable or that the plaintiff has

suffered any damage and evidence of this offer is not admissible except in a proceeding

to determine costs.  If this offer is not accepted in writing within ten (10) days after it is

served, it shall be deemed withdrawn.

Albany, New York
April 21, 2010

McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.

BY: _____
      Kenneth L. Gellhaus, Esq./Bar Roll # 101755
      *Attorneys for Defendant*
      677 Broadway, 5th Floor
      Albany, New York  12207
      518-447-3200

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT VAN ECHAUTE

Plaintiff,

-against-

LAW OFFICE OF THOMAS LANDIS, ESQ.,

Defendant.

**AFFIDAVIT OF SERVICE**

Docket #:09-cv-01071-
NAM-GHL

---

STATE OF NEW YORK    )
                         ) s.s.
COUNTY OF ALBANY     )

     Deborah A. Roraback, being duly sworn, deposes and says that she is over the age of 18 years, resides in the Town of Colonie and is employed by McNamee, Lochner, Titus & Williams, P.C.; that on the 21st day of April, 2010 she served a copy of the within **Offer of Judgment** on the following:

> LEMBERG & ASSOCIATES, LLC
> 1100 Summer Street, Fl. 3
> Stamford, CT 06905

by depositing a true and correct copy of the same properly enclosed in a post-paid wrapper, in the official depository maintained and exclusively controlled by the United States at 677 Broadway, Albany, New York 12207, directed to the above, at their respective address, that being the address designated for that purpose upon the last papers served in this action or the place where the above then resided or kept offices, according to the best information which can be conveniently obtained.

                                        _Deborah A. Roraback_
                                        Deborah A. Roraback

Sworn to before me this
21st day of April, 2010.

_Maureen A. Kucharski_
Notary Public

MAUREEN A. KUCHARSKI
Notary Public, State of New York
No. 01KU4855324
Qualified in Schenectady County,
Commission Expires June 23, 20 14

{M0335171.1}

# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM H. NELSON and          *
WILLIAM E. NELSON,             *
                               *
            Plaintiffs,        *
                               *
    v.                         *          Civil Action No. 09-10513-JLT
                               *
LAURENCE A. HECKER,            *
                               *
            Defendant.         *

ORDER

April 28, 2010

TAURO, J.

Plaintiffs initiated this suit for damages based on Defendant's violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA") and the Massachusetts Consumer

Protection Act, Mass. Gen. Laws c. 93A § 2 ("Chapter 93A").  On November 24, 2009, Plaintiffs

accepted Defendant's Offer of Judgment pursuant to Fed. R. Civ. P. 68 and this court

subsequently entered a judgment for Plaintiffs in the amount of $2001.00 plus attorney's fees and

costs.  Presently at issue is Plaintiff's Motion for Attorney's Fees and Costs [#24].  Plaintiff seeks

an award of $10,875.00 in attorney's fees and $420.00 in costs.  Defendant opposes the motion

on the grounds that the award sought is excessive.

Under the FDCPA and Chapter 93A, Plaintiffs, as the prevailing parties,[1] are entitled to

---

[1]For a party to be considered "prevailing" as that term is used by fee-shifting statutes,
"there must be a 'material alteration of the legal relationship of the parties' and there must be
'judicial imprimatur on the change.'" Smith v. Fitchburg Publ. Schools, 401 F.3d 16, 22 (1st Cir.
2005) (quoting Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human

1

receive from the Defendant the costs of the action, together with a reasonable attorney's fee as

determined by the court.[2] "The lodestar method is the strongly preferred method by which district

courts should determine what fees to award to prevailing parties."[3] To implement the lodestar

method, the court begins by multiplying the number of hours reasonably expended on the

litigation by a reasonable hourly rate.[4] The resulting amount constitutes the lodestar.

Though the trial court may fashion a lodestar which differs substantially from the fee

requested by the prevailing party by eliminating duplicative or unproductive hours or assigning a

more realistic rate to time spent, "deviation from an orthodox application of the method is

permissible [only] in highly unusual situations [and] a fee-awarding court shuns the tried-and-true

approach at its peril."[5] This court notes that "a party advocating the reduction of the lodestar

amount bears the burden of establishing that a reduction is justified."[6] And even then, the court is

only at liberty to adjust fees in accordance with the twelve factors set forth in <u>Johnson v. Georgia</u>

---

Res., 532 U.S. 598, 604-05 (2001)); <u>see also</u> <u>Doe v. Boston Pub. Schools</u>, 358 F.3d 20, 25 (1st Cir. 2004). Where, as here, Plaintiffs have received a judgment on the merits pursuant to an Offer of Judgment by the Defendant, Plaintiffs are the prevailing parties. Notably, Defendant does not dispute that Plaintiffs are entitled to an award of attorney's fees as the prevailing parties. Rather, Defendant opposes <u>Plaintiff's Motion for Attorney's Fees</u> as being excessive in the award sought.

[2]<u>See</u> 15 U.S.C. § 1692k(a)(3); Mass. Gen. Laws c. 93A §9(4).

[3]<u>Coutin v. Young & Rubicam P.R.</u>, 124 F.3d 331, 337 (1st Cir. 1997) (reviewing an award of attorney's fees pursuant to the fee-shifting provision in 42 U.S.C. § 1988); <u>Malone v. Hecker</u>, 2007 U.S. Dist. LEXIS 86910, at *3 (D. Mass. Nov. 27, 2007).

[4]<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

[5]<u>Coutin</u>, 124 F.3d at 337.

[6]<u>United States Football League v. National Football League</u>, 887 F.2d 408, 413 (2d Cir. 1989) (citing <u>Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102, 118 (3d Cir. 1976)).

<u>Highway Express</u>[7] and subsequently embraced by the First Circuit.[8]

In accordance with the procedure laid out above, this court starts by calculating the lodestar amount. To determine the reasonable hourly rate to be applied "[i]n the fee-shifting context, a district court's primary concern is with the market value of counsel's services. Thus, the rate that private counsel actually charges for [his] services, while not conclusive, is a reliable indicium of market value."[9] Accordingly, it is proper for the district court to rely on the attorney's customary billing practices in arriving at a reasonable hourly rate for the attorney's services.[10]

Here, Plaintiff's contemporaneous billing records set forth the rate of $125.00 per hour for administrative work or work performed by a paralegal. Where an attorney performed paralegal or administrative work, the attorney's time was billed at the paralegal rate of $125.00 per hour. The work of two associates working underneath the lead attorney in the matter was billed at $275.00 per hour and the work of lead counsel was billed at his standard hourly rate of $350.00 per hour. Because these are the standard rates charged by Plaintiff's counsel, an active and experienced

---

[7] 488 F.2d 714, 717-19 (5th Cir. 1974).

[8] <u>Coutin</u> 124 F.3d at 337 n.3. Those factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases.

[9] <u>United States v. One Star Class Sloop Sailboat</u>, 546 F.3d 26, 28 (1st Cir. 2008) (citing cases).

[10] <u>See</u> <u>id.</u> at 41.

3

lawyer in consumer matters, and because Defendant does not challenge Plaintiff's hourly rates, this court finds the rates set forth in counsel's contemporaneous billing records to be reasonable.

Defendant's primary challenge to Plaintiff's counsel's calculation of attorney's fees centers around certain entries in the contemporaneous billing records that Defendant believes to be excessive. In essence, Defendant claims that Plaintiffs' counsel took too long to complete some of the tasks related to this litigation. Defendant is correct that this case was not particularly complex. But this court has closely reviewed the entries in Plaintiffs' counsel's contemporaneous billing records and finds them to be reasonable, with the exception of 1.4 hours spent reviewing and researching Defendant's Motion to Disqualify Plaintiff's Counsel after this motion was rendered moot by Plaintiffs' acceptance of the Offer of Judgment.

Having determined that Plaintiffs' counsel's standard billing rates are reasonable and that the hours expended on this matter were also reasonable with the exception set forth above, this court adopts and incorporates by reference the contemporaneous billing records submitted by Plaintiffs in connection with the pending Motion for Attorney's Fees and Costs. In arriving at the lodestar amount, however, this court subtracts $490.00 from counsel's figure of $10,875.00 to account for the 1.4 hours of unproductive time spent reviewing the mooted Motion to Disqualify. The lodestar amount is, therefore, $10,385.00.

Defendant next asks this court to reduce the lodestar amount "by 50% based on the unexceptional nature of the work required."[11] As this court noted above, this case was not particularly complex. Nonetheless, this court is satisfied, given the reasonableness of the both the hourly rates and the hours expended by Plaintiffs' counsel, that the lodestar amount is

---

[11]See Def.'s Opp. Pl.'s Mot. Attorney's Fees, 4.

commensurate with the nature of the work.[12]  In light of the foregoing, this court can discern no "highly unusual situation"[13] in this case, which would make it appropriate to depart from the lodestar amount in awarding attorney's fees.

Lastly, this court finds, and Defendant does not dispute, that Plaintiff's assessment of $420.00 in costs for the filing fee and service of the summons and complaint is also reasonable. Accordingly, Plaintiff's Motion for Attorney's Fees and Costs [#24] is ALLOWED.  Plaintiff is hereby awarded $10,385.00 in attorney's fees and $420.00 in costs.

IT IS SO ORDERED.

                                        /s/ Joseph L. Tauro
                                        United States District Judge

---

[12]This court notes that it is not unusual for awards of fees in consumer protection cases to far exceed the amount of damages awarded.  See, e.g., Malone v. Hecker, 2007 U.S. Dist. LEXIS 86910, at *3 (D. Mass. Nov. 27, 2007); City of Riverside v. Rivera, 477 U.S. 561, 574 (1986). Defendant contends that these cases are inapposite because the damage awards resulted from jury trials.  This court, however, relies on these cases as examples of the fact that fee awards often drastically outsize the amount of damages, not as indicators of the appropriate fee award in this case.

[13]Coutin, 124 F.3d at 337.

5

# Exhibit E

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Irving BARUCH, Plaintiff,
v.
HEALTHCARE RECEIVABLE MANAGEMENT,
INC., Defendant.
**No. 05-CV-5392 (CPS)(JMA).**

Oct. 30, 2007.

Shmuel Klein, Spring Valley, NY, for Plaintiff.


MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

**\*1** Plaintiff Irving Baruch brought this action against defendants Healthcare Receivable Management, Inc. ("Healthcare Receivable" or "defendant"), John Doe, Jane Roe, and XYZ Corp. Plaintiff's complaint ("Complaint"), filed November 16, 2005, sought damages and declaratory relief for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, tortious infliction of emotional distress, and invasion of privacy. Now before this Court are plaintiff's Objections to the Magistrate Judge's September 11, 2007, Report and Recommendation ("Report and Recommendation") as to damages. For the reasons set forth below, I adopt in part and modify in part the Report and Recommendation.


**Background**


*A. Procedure*

Plaintiff filed the Complaint herein on November 16, 2005. On February 9, 2006, defendant, represented by counsel, filed an answer. On November 8, 2006, I granted defendant's counsel's motion to withdraw, effective upon the filing of a Notice of Appearance by new counsel, and referred the matter to Magistrate Judge Azrack for a settlement conference. A settlement conference was scheduled for January 6, 2007, and defendant was ordered to retain and appear with new counsel by that date. On January 15, 2007, Gilbert Hernandez, owner of defendant, expressed defendant's desire to "not spend any more funds on a case that has no merit." As defendant refused to appear or otherwise further defend this case, plaintiff made a motion for default judgment on February 21, 2007, which was served on defendant, which filed no opposition.

On May 9, 2007, the Clerk of the U.S. District Court for the Eastern District of New York noted the defendant's default pursuant to Local Rule 55.1 and Rule 55(a) of the Federal Rules of Civil Procedure. The matter was thereafter referred to the Magistrate Judge for an inquest. The remaining defendants were dismissed from the case by plaintiff on May 14, 2007.

On September 11, 2007, Magistrate Judge Azrack filed a Report and Recommendation, granting plaintiff $2,500 in actual and statutory damages and $305 in costs. On September 19, 2007, plaintiff filed an Objection to the Report and Recommendation.


*B. Facts*FN1

> FN1. Because default has entered against defendant, I accept as true all of the factual allegations in the Complaint, except those relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981).

Plaintiff, who resides in Queens, alleged in the Complaint that on two occasions, February 4, 2000 and March 24, 2000, he went to Raytel Medical Imaging ("Raytel"), which is also located in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

Page 2

Queens, for X-rays. On both occasions plaintiff told one of Raytel's employees that he would not be able to pay anything for the procedure, and that Raytel would have to accept any Medicaid disbursement as full payment. According to plaintiff, on each occasion the employee to whom plaintiff spoke conferred with her supervisor for a few minutes and stated the supervisor agreed on behalf of Raytel that plaintiff would neither receive any bill nor be responsible for any additional payment. Plaintiff thereafter went forward and had the X-rays taken and made no payments for the procedures.

**\*2** In January, 2005, plaintiff began receiving calls from defendant. In these calls, defendant's representative stated the company was collecting a debt for Raytel. Plaintiff explained his arrangement with Raytel and refused to pay. Thereafter, on June 20, 2005, July 21, 2005, July 26, 2005, and September 13, 2005, defendant sent letters threatening legal action against plaintiff. Following receipt of each of these letters, plaintiff called defendant and asked if he were being sued. A representative told him he was "not being sued yet." On these calls, plaintiff requested that defendant cease sending him letters and reiterated his refusal to pay. Defendant in turn threatened to report the debt on plaintiff's credit report. Plaintiff alleges that he was greatly upset by these calls, letters, and threats.[FN2]

> **FN2.** The above facts were derived from the Complaint. In an affirmation in support of his motion for default judgment, plaintiff avers the following, additional facts, which were before the Magistrate Judge: Beginning in 2003, plaintiff began receiving collection notices from defendant, which asserted plaintiff owed defendant for the X-Rays performed by Raytel. Plaintiff called defendant to explain the situation. The supervisor to whom plaintiff spoke told plaintiff he did not care about any prior arrangements plaintiff had made, and that plaintiff had to pay the debt or defendant would send more collection letters

and sue plaintiff.

> Since 2003, plaintiff avers, he received at least one collection letter every month, and numerous collection calls from the aforementioned supervisor, his wife, and other employees of defendant. When plaintiff asked defendant to stop, the supervisor would say upsetting things, such as "now I will send you 20 letter [sic] a month", "We will report this to the credit bureaus," or "We will ruin your credit."

### Discussion

Plaintiff objects to the damages award recommended by Magistrate Judge Azrack, as well as the Magistrate's failure to award attorney's fees [FN3] and all costs requested by plaintiff. Federal Rule of Civil Procedure 72(b) provides that when ruling on objections to a Magistrate Judge's report and recommendation, which is dispositive of a case,

> **FN3.** Plaintiff did not request attorney's fees in his application for default judgment, much less provide the information to Magistrate Judge Azrack that would allow her to determine reasonable fees. Therefore there was no reason Magistrate Judge Azrack would have made such an award. However, for the reasons set forth below, I consider this portion of plaintiff's "Objections" as a motion for attorney's fees under the FDCPA and rule accordingly.

[t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)

**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

Accordingly, I review the Magistrate Judge's Report and Recommendation de novo.

As an initial matter, I adopt the portion of the Report and Recommendation, for the reasons stated therein, in which Magistrate Judge Azrack concludes that the Complaint establishes that defendant violated 15 U.S.C. § 1692e. FN4FN5

FN4. 15 U.S.C. § 1692e provides, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...

(5) the threat to take any action that cannot legally be taken or that is not intended to be taken.

FN5. The Magistrate Judge also concluded that the default constituted an admission of liability as to 15 U.S.C. § 1692c(c).

15 U.S.C. § 1692c(c) provides:

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except-

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke spe-

cified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Even if defendant's default amounts to an admission of liability of all the well-pleaded allegations in the Complaint, plaintiff has not made out a violation of 1692c(c) because the allegations are only that plaintiff orally requested that defendant cease communication. Nevertheless, because plaintiff has pleaded and established a prima facie violation of 1692e, liability under the FDCPA is established, as a single violation of the FDCPA is sufficient to establish a debt collector's civil liability. *Chiverton v. Fed. Fin. Grp., Inc.,* 399 F.Supp.2d 96, 100, n. 3 (D.Conn.2005) (citing 15 U.S.C. § 1692k and cases).

*A. Damages* FN6

FN6. Though plaintiff now seeks $100,000 in damages, I note in his original motion for default judgment, filed February 21, 2007, he requested only $50,000. He did request $100,000 in his supplemental affirmation for default judgment, dated July 11, 2007.

Section 1692k of the FDCPA provides for three types of damages: (1) statutory damages of up to $1,000; (2) actual damages for any injuries actually sustained; and (3) reasonable attorney's fees, costs and expenses. *See* 15 U.S.C. § 1692k(a). Plaintiff has averred the acts of defendant caused him "great emotional distress." FN7 Due to defendant's acts,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

plaintiff "could not sleep, ... got very depressed and ... went to many doctors." He "was prescribed anti-depressant medication and sleeping pills." He also avers that defendant's acts caused him heart problems, requiring him to see cardiologists and get MRI's, which were aggravated whenever defendant called. As a result, plaintiff avers, he was forced to file for disability and his quality of life has suffered. No documentary or other corroborative proof of the sort which would presumably have been created from doctors' visits, prescription medications, MRI's, disability claims or awards were presented to the Magistrate Judge. Nor was any expert opinion offered as to the causal relation between plaintiff's medical condition and defendant's actions.

> FN7. A plaintiff may recover actual damages under 15 U.S.C. 1692k(a) (1) for emotional distress. *See, e.g., Weber v. Goodman,* 1998 WL 1807355 (E.D.N.Y.1998) (citing *Teng v. Metropolitan Retail Assoc.,* 851 F.Supp. 61, 68 (E.D.N.Y.1994)); *see also Cooper v. Ellis Crosby & Associates, Inc.,* No. 05 CV 1467, 2007 WL 1322380, at *2 (D.Conn. May 2, 2007).

1. Actual damages

**\*3** There are relatively few benchmarks for the awarding of actual damages under the FDCPA for allegations of emotional distress. Courts within this circuit have awarded damages to individuals for emotional distress in amounts ranging from $1,000 to $5,000. *See Cooper v. Ellis Crosby & Assoc., Inc.,* 2007 WL 1322380 (D.Conn. May 2, 2007) ($3,000); *Gervais v. O'Connell, Harris & Assoc., Inc.,* 297 F.Supp.2d 435 (D.Conn.2003) ($1,500); *Chiverton v. Fed. Fin. Group, Inc.,* 399 F.Supp.2d 96 (D.Conn.2005) ($5,000); *Teng v. Metropolitan Retail Assoc.,* 851 F.Supp. 61 (E.D.N.Y.1994) ($1,000).

I compare the facts of these cases with those of the instant case, because in those cases, as in this one, plaintiffs' complaints are not corroborated by any medical or documentary evidence. The cases suggest that the relevant factors include the egregiousness of the misconduct and the plaintiffs' descriptions of their injuries.

In *Cooper,* an employee of the defendant debt collection agency called plaintiff at work, identified himself as an investigator for a bank rather than an employee of defendant, and threatened to have her arrested if she did not pay $4,300 within two hours of the call. He also threatened to notify her supervisor and subpoena her work hard drive. Plaintiff testified that she suffered anxiety, embarrassment, inconvenience, and worry as a result. The court awarded $3,000 in actual damages.

In *Gervais,* over the period of a week, an employee of defendant debt collection agency hounded plaintiff for payment on three credit cards, misrepresenting that he was an attorney and other facts. Plaintiff, who had suffered several heart attacks and a stroke, sent payment to the defendant, per the employee's instructions. Plaintiff testified that he was confused and fearful both of losing his assets and of having another heart attack and stroke. The Court awarded $1,500 in actual damages.

In *Chiverton,* an employee of defendant debt collection agency harassed each of the two plaintiffs over a period of several months. Beginning in July 1999, defendant called the first plaintiff, Chiverton, at work seeking to collect a debt that Chiverton had previously satisfied. Chiverton told defendant as much and sent documentation as proof. Nevertheless, two weeks later, defendant called Chiverton again, and again Chiverton told defendant the debt had been satisfied and faxed documentation as proof. In October 1999, Steven Deer, a representative of defendant, called again. Chiverton told Deer he was not allowed to take personal calls at work. Deer continued to call, and on one occasion in November 1999, called Chiverton several times in succession. As Chiverton was a fiscal supervisor with the Department of Defense and awaiting a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

commission as a second lieutenant, he was forced to tell his supervisor and was fearful his commission would be affected. As to the second plaintiff, Collier, Deer called her at least 20 times between November 1999 and January 2000. He also called Collier's grandson and daughter about the debt, and threatened her with arrest. Collier averred in her affidavit that Deer's conduct caused her embarrassment, anxiety and shame. The court awarded Chiverton and Collier $5,000 each in actual damages.

**\*4** In *Teng,* defendant called plaintiff's place of employment several times in a single day, and, as it was plaintiff's day off, requested plaintiff's home number from plaintiff's supervisor under the ruse of needing to get an urgent, personal message to plaintiff. An employee of defendant also called plaintiff's home later that night, identifying himself as a City Marshal, and threatening to come take away his furniture. The court awarded $1,000 in actual damages.

In this case, plaintiff submitted to the Magistrate Judge his affirmation that, since 2003, he received numerous threatening telephone calls and letters, as a result of which he lost sleep, became depressed and suffered heart problems. The defendant's acts therefore lasted longer than any of the acts in *Cooper, Gervais, Chiverton,* and *Teng.* It is also plausible that plaintiff has suffered anxiety, sleeplessness and depression over the course of defendant's misconduct. *See Donahue v. NFS, Inc., Donahue v. Lonocha,* 781 F.Supp. 188, 194 (W.D.N.Y.1991) ("acknowledging that plaintiff suffered some quantum of mental or physical distress stemming in part" from defendants' violations of FDCPA). Accordingly, I award $5,000 in actual damages.[FN8]

> **FN8.** I note that there is some authority that generalized, blanket assertions are "insufficient proof of specific injury to justify an award of actual damages under the FDCPA." *Kreuger v. Ellis, Crosby & Assoc., Inc.,* 2006 WL 3791402, at \*2

(D.Conn. Nov.9, 2006) (declining to award actual damages in FDCPA case where plaintiff alleged only that defendant caused him 'anxiety, embarrassment, inconvenience, and worry') (citing *Emanuel v. Am. Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989); *Evanauskas v. Strumpf,* 2001 WL 777477, at \*5 (D.Conn. June 27, 2001) ). However, here the duration and persistence of the misconduct makes the plaintiff's assertions more plausible than the claims in the cited cases.

### 2. Statutory damages

In determining the amount of statutory damages, which are limited to $1,000, 15 U.S.C. § 1692k(a)(2)(A), a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). No objections having been filed, and for the reasons stated therein, I adopt the portion of the Report and Recommendation that recommends plaintiff be awarded statutory damages in the amount of $1,000.[FN9]

> **FN9.** Because I award damages for emotional distress under the FDCPA, I need not reach the common law tort claim. *Chiverton,* 399 F.Supp.2d at 102, n. 4. Further, the Magistrate Judge, in her Report and Recommendation, did not consider damages under either of plaintiff's common law claims for the same reason, and plaintiff does not object to this portion of the Report and Recommendation. In plaintiff's Statement of Damages, filed with his Motion for Default Judgment, plaintiff seeks damages only for emotional distress.

### B. Attorney's fees and Costs

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

The FDCPA requires the payment of costs and reasonable attorney's fees to a successful plaintiff. 15 U.S.C. § 1692k(a)(3) FN10; *see also Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir.1991); *Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989) (FDCPA mandates such an award for a successful action). Plaintiff was successful in this action, receiving an award of $5,000 for actual damages and the maximum $1,000 for statutory damages. Thus, plaintiff is entitled to an award of attorney's fees and costs.

> FN10. 15 U.S.C. § 1692k(a)(3) provides, in relevant part:

> any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

1. Attorney's Fees

The Second Circuit uses the "presumptively reasonable fee," known as the "lodestar figure" (or "lodestar") in other circuits, to determine reasonable attorneys fees for federal claims. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110 (2d. Cir. July 12, 2007); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1159 (2d Cir.1994); *Heng Chan v. Sung Yue Tung Corp.,* No. 03-CV-6048, 2007 WL 1373118 (E.D.N.Y. May 8, 2007).

The presumptively reasonable fee "is arrived at by multiplying the number of hours reasonably expended on the litigations ... by an hourly rate." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998). In the Second Circuit "any attorney ...

who applies for court-ordered compensation ... must document the application with contemporaneous time records." These records should specify, for each attorney, the date, the hours expended and the nature of the work. *New York State Ass'n for Retarded Children, Inc., v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven,* No. 94-CV-2622, 2005 WL 1397202, *9 (E.D.N.Y.2005) (citing *Perdue v. City Univ. of New York,* 13 F.Supp.2d 326, 345 (E.D.N.Y.1998)).

**\*5** Plaintiff's attorney expended 37.2 hours during the course of this litigation. Plaintiff's attorney's hourly rate is $385.00. Thus, plaintiff requests an award of attorney's fees of $14,322.00.

The attorney's rate must be " 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.' " *Cruz v. Local Union No. 3,* 34 F.3d at 1159 (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Indeed, the Second Circuit has held that the rates used to calculate the "lodestar" must be in line with those rates prevailing in " 'the district in which the court sits.' " *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir.1997) (quoting *Polk v. New York State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir.1983)). At the same time, however, the Second Circuit has made it clear that "[a] district court's 'choice of rates [is] well within [its] discretion.' " *Cruz,* 34 F.3d at 1159 (quoting *Cabrera v. Jakabovitz,* 24 F.3d 372, 393 (2d Cir.1994)).

In the Eastern District of New York, courts have awarded hourly rates to partners ranging from $200.00 to $375.00. *See Commission Express Nat'l, Inc. v. Rikhy,* 2006 WL 385323 (E.D.N.Y. Feb.17, 2006) ($300); *Aiello,* 2005 WL 1397202, at *7 ($350) (compiling cases); *General Motors Corp. v. Villa Marin Chevrolet, Inc.,* 240 F.Supp.2d 182

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

(E.D.N.Y.2002) ($315 to $375 based upon detailed description of experience and expertise); *Luciano v. Olsten Corp.,* 912 F.Supp. 663 (E.D.N.Y.1996) ($200 for partner at a small firm).

Plaintiff's attorney provides an affirmation that he has been practicing law for 19 years. He also appears to be a sole practitioner. Though his rate is at the high end of the awards discussed above, I note that several of the cited cases are a few years old and it is safe to assume that hourly rates have risen since the cases were decided. He provides, however, no additional information concerning the reasonableness of his rate, which falls at the high end of awards granted to partners in this district, and thus has failed to meet his burden to demonstrate the reasonableness of his rate. *See Aiello,* 2005 WL 1397202, at *7 (citing *Blum,* 465 U.S. at 896 n. 11) ("the burden is on the fee applicant to produce satisfactory evidence ... that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (emphasis added). Accordingly, the Court finds it appropriate to reduce Mr. Klein's hourly rate from $385.00 to $350.00.[FN11] *See id.; General Electric Co. v. Compagnie Euralair, S.A.,* 1997 WL 397627, at *5 (S.D.N.Y. July 3, 1997) (reducing fee request where the plaintiff's counsel did not provide the court with adequate information as to counsel's experience level or why billing rate was reasonable).[FN12]

> FN11. Though from the District of Connecticut, I note that at least one court has awarded attorney's fees in FDCPA in the amount of $350 .00/hour. *Cooper,* 2007 WL 1322380, at *3.

> FN12. Plaintiff does cite the Laffey Matrix, which purports to set forth $509/hour as a reasonable rate for an attorney with nineteen years of experience. The Laffey Matrix, however, has not been adopted, or even cited with approval, by any court in this Circuit. Moreover, the Matrix's web-

site bills itself as the "The primary tool for assessing legal fees in the *Washington-Baltimore* area." http://www.laffeymatrix.com/ (last visited Oct. 17, 2007) (emphasis added). Thus, plaintiff's citation adds little, if any, support to his contention that $385/hour is a reasonable fee.

Plaintiff has submitted an affidavit describing the nature, date, and hours spent on this case. In total, he spent 37.2 hours. I find, however, that 1.3 hours represent clerical or other work not compensable at an attorney's rate, such as copying, mailing, and uploading documents to this Court's Electronic Case Filing system. *See* 10/30/2006, 2/21/2007, 7/23/2007, and 7/30/2007 entries. Such work may not be billed at attorney or paralegal rates. *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Thus, I find that 35 .9 hours spent by plaintiff's attorney were reasonable.

**\*6** Thus, multiplying 35.9 hours by $350 equals $12,565. I grant plaintiff attorney's fees in this amount.

#### a. Proportionality

The attorney's fee award is approximately twice the damages award. The Second Circuit has rejected a rule requiring strict proportionality between the fee award and the damages award at least in the context of civil rights statutes. *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522 (2d Cir.1991). The court in *Cowan* stated that "a presumptively correct lodestar figure should not be reduced simply because a plaintiff recovered a low damage award." *Id.* at 526.

The Second Circuit has recently reaffirmed its decision in *Cowan* that proportionality of the fee award to the damages award cannot serve as the sole factor for determining allowable fees in civil rights cases. *See Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir.2005) ("If the district court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)
**(Cite as: 2007 WL 3232090 (E.D.N.Y.))**

reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error."); *see also Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425-26 (2d Cir.1999). "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." *Id.* at 426 (citing Rivera, 477 U.S. at 575 (plurality opinion) ("Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief.")).

The same rationale applies to awards of attorney's fees under the fee shifting provisions of FDCPA. Since recoveries under FDCPA are typically small, as evidenced by the cases discussed above and due to the limitation on statutory damages provided in 15 U.S.C. § 1692k, a proportionate fee award would often be insufficient to attract competent counsel. Thus, the $12,565 award is appropriate. Such an award is approximately twice plaintiff's damages award.

2. Costs

Costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *Tips Exports, Inc., v. Music Mahal, Inc.,* 2007 WL 952036 (E.D.N.Y. Mar.27, 2007). Costs relating to filing fees, process servers, postage, and photocopying are routinely made. *See id.* at 11. "It is also reasonable that counsel be reimbursed for mileage and parking costs" as well as gas. *See Rand-Whitney Containerboard v. Town of Montville,* 2006 WL 2839236 (D.Conn. Sept.5, 2006). Though plaintiff has submitted an itemized list of his attorney's costs, he has provided no supporting documentation. Further, his requested costs differ from those requested in his earlier Statement of Damages, filed with plaintiff's Motion for Default Judgment. Indeed, in his current cost request, plaintiff requests $350 for the filing fee, although the filing

fee at the time the action was commenced was $250.[FN13] Because plaintiff has failed to meet his burden of demonstrating costs, I adopt the recommendation in the Recommendation and Report that plaintiff be awarded $305 in costs, this amount representing filing and service fees. Thus, an award of costs should be entered in the amount of $305.

> FN13. The increase of the filing fee from $250.00 to $350.00 applies to cases filed on or after April 9, 2006. This case was filed on November 16, 2005. Thus, the $250.00 fee was applicable. http://www.nyed.uscourts.gov /General_Information/Schedule_of_Fees/Court_Fees/court_fees.html (last visited on October 25, 2006).

**Conclusion**

**\*7** For the foregoing reasons, I adopt in part and modify in part the Report and Recommendation. The Clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $18,870 .00, representing $6,000 in actual and statutory damages, $12,565 in attorney's fees, and $305 in costs. The Clerk is also directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

E.D.N.Y.,2007.
Baruch v. Healthcare Receivable Management, Inc.
Not Reported in F.Supp.2d, 2007 WL 3232090 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1507016 (N.D.N.Y.)
**(Cite as: 2010 WL 1507016 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John W. SCOTT, Plaintiff,
v.
Martin HAND, Defendant.
**No. 07-CV-0221 (TJM)(RFT).**

April 15, 2010.

Michael H. Sussman, Sussman, Watkins Law Firm, Goshen, NY, for Plaintiff.

David L. Posner, McCabe, Mack Law Firm, Poughkeepsie, NY, for Defendant.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION

**\*1** Plaintiff received a jury verdict in his favor on February 16, 2010 awarding nominal damages in the amount of $1 for his 42 U.S.C. § 1983 claim. Plaintiff now moves pursuant to 42 U.S.C. § 1988 to recover $30,013.00 in attorney's fees and costs.[FN1] For the foregoing reasons, Plaintiff's motion is granted as modified.

> FN1. Plaintiff requests $813.00 in costs and $29,200 in attorney's fees. The attorney's fees request is calculated based upon a $400 per hour legal fee at 61 hours, and $200 per hour travel fee at 24 hours. Sussman Aff. at 9-10.

## II. DISCUSSION

Under 42 U.S.C. § 1988, the prevailing party may, at the discretion of the court, be awarded "reasonable attorney's fee[s]." See LeBlanc-Sternberg v. Fletcher, 143

F.3d 748, 758 (2d Cir.1998) ("A Plaintiff who has prevailed in the litigation has established only his eligibility for, not his entitlement to, an award of fees.").

There is a two part test for determining whether a party is entitled to receive reasonable attorney's fees. First, the party seeking attorney's fees must be the "prevailing party." Farrar v. Hobby, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). A plaintiff who prevails on the merits of his case, even though he was awarded only nominal damages, is a "prevailing party" under 42 U.S.C. § 1988. Id. at 112 ("We therefore hold that a Plaintiff who wins nominal damages is a prevailing party under § 1988."). Plaintiff is a "prevailing party."

Second, once a party proves he is the "prevailing party," he must then prove that his requested fee is "reasonable." Pino v. Locascio, 101 F.3d 235, 237 (2d Cir.1996); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." Farrar, 506 U.S. at 114; see also Pino, 101 F.3d at 238 ("[W]ith regard to the reasonableness prong, the Supreme Court stated that in some circumstances, even a plaintiff who formally 'prevails' ... should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.") (citations and internal quotations omitted).

When calculating a reasonable fee, the Court relies on the "presumptively reasonable fee" test derived from the "lodestar" calculation. Simmon v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir.2009). The "presumptively reasonable fee" test requires the Court "to bear in mind all of the case-specific variables ... relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117 (2d Cir.2007)). The calculation required by the test "involves determining the reasonable hourly rate for each attorney and the reasonable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1507016 (N.D.N.Y.)
**(Cite as: 2010 WL 1507016 (N.D.N.Y.))**

number of hours expended, and multiplying the two fig-
ures together to obtain a presumptively reasonable fee
award." *Porzig v. Dresdner, Kleinwort, Benson, N. Am.
LLC,* 497 F.3d 133, 141 (2d Cir.2007) (citations omit-
ted).

**\*2** In considering the reasonableness of the hourly rate
requested by the prevailing party, the Court is presumed
to "use [ ] the hourly rates employed by the district in
which the reviewing court sits." *Arbor Hill Concerned
Citizens,* 493 F.3d at 120 (citing *In re Agent Orange
Products Liability Litigation,* 818 F.2d 226, 232 (2d
Cir.1987)). However, the Court may apply an
"out-of-district rate" over this presumption if it is clear
"that a reasonable, paying client would have paid those
higher rates." *Simmons.,* 575 F.3d at 174 (citations
omitted). When determining the actions of a reasonable,
paying client, the court requires that "[t]he party seek-
ing the award ... make a particularized showing, not
only that the selection of out-of-district counsel was
predicated on experience-based, objective factors, but
also of the likelihood that use of in-district counsel
would produce a substantially inferior result." *Id.* at
176.

Here, although the Plaintiff makes a particularized
showing of his attorney's extensive background, *see*
Sussman Aff. at pp. 5-7, he fails to make a particular-
ized showing that the use of in-district counsel would
have produced a "substantially inferior result." The case
was a relatively simple and straightforward First
Amendment retaliation claim. While Plaintiff's counsel
did a fine job in presenting the facts to the jury and ar-
guing the legal issues to the Court, there is no basis to
conclude that experienced, in-district counsel would
have produced inferior results. Therefore, Plaintiff has
failed to overcome the presumption in favor of the use
of in-district attorney's fee rates.

The Court finds the prevailing in-district hourly rate for
experienced counsel to be $275 per hour, with the
hourly rate for travel time to be one-half of this rate. *See
Price v. New York State Bd. of Elections,* 2009 WL
4730698, at \*3 (N.D.N.Y. Dec.4, 2009); *Martinez v.
Thompson,* 2008 WL 5157395, at \*17 (N.D.N.Y. Dec.8,
2008); *see also Arbor Hill Concerned Citizens Neigh-*

*borhood Ass'n v. County of Albany,* 419 F.Supp.2d 206,
211 (courts traditionally use one-half of hourly rates for
time spent traveling). Accordingly, the Court will apply
a reasonable in-district per hourly rate of $275, and
$137.50 per hour for time spent traveling.

In determining the reasonable hours to be awarded, the
Court is generally guided by a number of factors, *see
Arbor Hill Concerned Neighborhood Ass'n v. County of
Albany and Albany County Bd. of Elections,* 522 F.3d
182, 186 n. 3 (2d Cir.2008),[FN2] the consideration of
which may lead the Court, in its discretion, "to adjust
the fee upward or downward." *Hensley v. Eckerhart,*
461 U.S. at 434 (1983). The "degree of success ob-
tained" is "the most important factor" in determining
the reasonableness of the requested attorney's fee
award. *Farrar,* 506 U.S. at 114; *see also Hensley,* 461
U.S. at 436-37 ("The district court ... may simply re-
duce the award to account for the limited success. The
court necessarily has discretion in making this equitable
judgment.").

  FN2. These factors are:

  (1) the time and labor required; (2) the nov-
  elty and difficulty of the questions; (3) the
  level of skill required to perform the legal
  service properly; (4) the preclusion of em-
  ployment by the attorney due to acceptance
  of the case; (5) the attorney's customary
  hourly rate; (6) whether the fee is fixed or
  contingent; (7) the time limitations imposed
  by the client or the circumstances; (8) the
  amount involved in the case and the results
  obtained; (9) the experience, reputation, and
  ability of the attorneys; (10) the
  "undesirability" of the case; (11) the nature
  and length of the professional relationship
  with the client; and (12) awards in similar
  cases.

  *Arbor Hill Concerned Neighborhood Ass'n v.
  County of Albany and Albany County Bd. of
  Elections,* 522 F.3d 182, 186 n. 3 (2d
  Cir.2008) (citing *Johnson v. Ga. Highway
  Express, Inc.* 488 F.2d 714, 717-19 (5th

Slip Copy, 2010 WL 1507016 (N.D.N.Y.)
**(Cite as: 2010 WL 1507016 (N.D.N.Y.))**

Cir.1974)).

**\*3** Where a "prevailing party" has obtained a nominal damage award,

[c]ourts in this Circuit often apply the three-part test developed by Justice O'Connor in her concurring opinion in *Farrar* to determine whether a prevailing plaintiff's recovery was *de minimis,* such that low attorney's fees or no attorney's fees should be awarded. *See, e.g., Sclant v. Victor Belata Belting Co.,* No. 94-CV-0915E(Sc), 2001 U.S. Dist. LEXIS 16539, at *9 (W.D.N.Y. Oct. 2, 2001); *Sowemimo v. D.A.O.R. Security, Inc.,* No. 97 CIV. 1083 RLC, 2000 WL 890229, at *9 (S.D.N.Y. June 30, 2000); *Adams v. Rivera,* 13 F.Supp.2d 550, 552 (S.D.N.Y.1998); *Haywood v. Koehler,* 885 F.Supp. 624, 629 (S.D.N.Y.1995). The three factors articulated by Justice O'Connor are (1) whether there is "a substantial difference between the judgment recovered and the recovery sought," (2) "the significance of the legal issue on which the plaintiff claims to have prevailed," and (3) whether the plaintiff "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Farrar,* 506 U.S. at 121-22 (O'Connor, J., concurring).

*Millea v. Metro-North R. Co.,* 2010 WL 126186, at *5

(D.Conn. Jan.8, 2010).

In this case, Plaintiff sought compensatory and punitive damages from Defendant, but received only nominal damages. *See* Complaint at p. 4. Thus, there is a substantial difference between the judgment recovered and the recovery sought. Further, while Plaintiff did prevail on a claim that vindicated his First Amendment right to free speech, and while the vindication of such a right always serves to promote the public's interest in protecting those rights, the suit did not accomplish a broader public goal or have overt significance beyond the relationship between the parties to this action. Thus, the second and third factors set forth by Justice O'Connor in *Farrar* weigh in favor of diminishing the attorney's fees to be awarded in this action.

When viewed in light of the nominal result obtained and the uncomplicated nature of the litigation, the Court finds reason to adjust the reasonable attorney's fees to be awarded downward by 66%. This results in an attorney's fee award of $6,534.00.[FN3]

FN3.

| | | |
|---|---|---|
| 60 hrs x $275.00 = $16,500 x .33 = | | **$5,445.00.** |
| 24 (travel) hrs. x $137.50 = $3,300.00 x .33 | | **$1,089.00.** |
| **Total** | = | **$6,534.00** |

The Court finds the sought-after costs of $813.00 are reasonable.

Defendant shall pay Plaintiff $813.00 in costs.

**IV. CONCLUSION**

**IT IS SO ORDERED**

For the foregoing reasons, Plaintiff's motion for costs and attorney's fees [dkt. # 42] is **GRANTED IN PART** as follows:

N.D.N.Y.,2010.
Scott v. Hand
Slip Copy, 2010 WL 1507016 (N.D.N.Y.)

Defendant shall pay Plaintiff $6,534.00 in attorney's fees; and

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 689056 (E.D.N.Y.)
**(Cite as: 2009 WL 689056 (E.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Anna RODRIGUEZ, et al., Plaintiffs,
v.
PRESSLER AND PRESSLER, L.L.P., et al., Defendants.
**No. CV-06-5103 (BMC)(JO).**

March 16, 2009.

Claudia Eleaza Wilner, Neighborhood Economic Development Advocacy Project, Matthew D. Brinckerhoff, Emery Celli Brinckerhoff & Abady PC, New York, NY, Edward J. Josephson, South Brooklyn Legal Services Corp., Brooklyn, NY, for Plaintiffs.

Mitchell Lee Williamson, Pressler and Pressler, L.L.P., Cedar Knolls, NJ, Arthur Sanders, Law Office of Arthur Sanders, Spring Valley, NY, for Defendants.

***ORDER***

COGAN, District Judge.

**\*1** This matter is before the Court upon the Report and Recommendation of Magistrate Judge James Orenstein, pursuant to an Order of Referral as to plaintiffs' motion for attorneys' fees. A copy of the Report and Recommendation is attached. Plaintiffs have timely filed objections. I adopt, in part, the Report and Recommendation with the following modifications:

**I. Hourly Rates**

Having reviewed the factors set forth in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 184 (2d Cir.2008), unlike

Magistrate Judge Orenstein, I am convinced that a paying client would be willing to pay hourly rates of $450 and $300 for the services that Brinckerhoff and Wilner have rendered here. Although I take Magistrate Judge Orenstein's point that there are experienced counsel available to handle these types of matters for lower hourly rates, I find that counsels' requested rates are within the reasonable range for FDCPA cases in this district. *See Richardson v. Professional Recovery Systems, LLC,* 07-CV-3666 (BMC) (E.D.N.Y. Nov. 26, 2007) (approving rate of $300/hour for Wilner's unopposed fee application in FDCPA case); *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,* No. CV-04-2195 (CPS), 2006 WL 3681138, at *9 (E.D.N.Y. Dec.11, 2006) (approving hourly rate of $420 for experienced attorney in FDCPA case). Therefore, I decline to adopt the Report and Recommendation as it relates to counsels' hourly rates.

**II. Hours Expended**

I do, however, adopt the Report and Recommendation as it relates to Magistrate Judge Orenstein's finding regarding the reasonableness of hours expended in this matter. Therefore, I credit Wilner with 159.65 hours of compensable work for the plaintiffs and Brinckerhoff with 30 hours of compensable work for the plaintiffs.

**III. Downward Adjustment**

Based on the hourly rates and compensable hours detailed above, the presumptively reasonable fee award in this case is $61,395.00. I decline to adopt Magistrate Judge Orenstein's recommendation that the fee award should be reduced by 50% due to plaintiffs' "limited success" in this matter. By achieving the maximum possible monetary relief available under the statute, plaintiffs' counsel succeeded in their efforts. Indeed, the settlement reflected the rejection of a viable legal defense that could have limited their recovery to half of what

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 689056 (E.D.N.Y.)
**(Cite as: 2009 WL 689056 (E.D.N.Y.))**

they received. *See Dowling v. Kucker Kraus & Bruh, LLP.,* No. 99CIV11958RCC, 2005 WL 1337442, at *3 (S.D.N.Y. June 6, 2005) (holding "that the maximum statutory damages available to Plaintiffs under [the FDCPA] is limited to $1,000.00 per plaintiff per proceeding"). To the extent plaintiffs' counsel spent time on additional, non-viable legal theories, the reduction in total hours set forth in the preceding section is an adequate adjustment.

## IV. Other Costs

I adopt Magistrate Judge Orenstein's recommendation that the Court award other litigation costs in the amount of $9,064.04.[FN1]

> **FN1.** However, as the Report and Recommendation notes, defendants may comply with the portion of this award related to transcript costs "by satisfying the court reporter's invoices to the Emery Firm, regardless of its costs in doing so.

## V. Conclusion

**\*2** For the reasons set forth above, I award plaintiffs $61,395.00 in attorneys' fees and $9,064.04 in other costs, for a total award of $70,459.04.[FN2]

> **FN2.** I decline to award fees and costs associated with the instant motion.

## SO ORDERED.

E.D.N.Y.,2009.
Rodriguez v. Pressler and Pressler, L.L.P.
Slip Copy, 2009 WL 689056 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 1

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

⚐

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Ann READE-ALVAREZ and Ann R. Studen, on
behalf of themselves and all others similarly situated, Plaintiffs,
v.
ELTMAN, ELTMAN, & COOPER, P.C., Erin Capital Management, LLC, James Brian Boyle, William Nolan, Robert A. Russon, Paul Renaghan, Carl Fon, Manuel Brad Moses, William Cortellessa, Peter Cooper and Milton Rawle, Defendants.
**No. CV-04-2195 (CPS).**

Dec. 11, 2006.

Robert Louis Arleo, New York, NY, for Plaintiffs.

Thomas A. Leghorn, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, NY, for Defendants.

MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

**\*1** This is a class action brought by Ann Reade-Alvarez ("Alvarez") and Ann R. Studen ("Studen") against defendants Eltman, Eltman & Cooper, P.C. ("EEC"), Erin Capital Management, LLC ("ECM") and several of their officers and directors (collectively, "defendants"), for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or the "Act"). By memorandum opinion and order dated May 18, 2006, this Court granted the following motions: (1) to certify a settlement class; (2) for preliminary approval of a proposed settlement agreement; (3) for an order directing notice to the class; and (4) for an order setting dates for optouts, objections, and a hearing pursuant to Federal Rule of Civil Procedure

23(b)(3). Presently before the Court is plaintiffs' motion for final approval of the proposed class action settlement agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted, subject to the parties' modification of the Settlement Agreement in accordance with this opinion.

**BACKGROUND**

The following facts are drawn from the parties' submissions in connection with this motion, as well as from prior opinions in connection with this case. See *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 369 F.Supp.2d 353 (E.D.N.Y. May 10, 2005); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* No. 04-2195, 2006 WL 1367414 (E.D.N.Y. May 18, 2006).

EEC is a law firm incorporated under the laws of the State of New York with its principal place of business in Manhattan. (Compl.¶ 5).[FN1] ECM is a debt collection agency with its principal place of business in the same office as EEC. (*Id.* ¶ 6). Plaintiffs allege that in correspondence they received from EEC, the telephone number and office address for EEC is the same as ECM. (*Id.* ¶ ¶ 47, 48). ECM is purportedly "sending letters and alleged legal pleadings under the name of the defendant EEC" and ECM's agents are, according to plaintiffs, engaged in the unauthorized practice of law. (*Id.* ¶ 49).

> FN1. Although plaintiffs filed a second amended complaint on January 3, 2005, Judge Glasser, in his May 10, 2005 Memorandum and Order granting in part and denying in part defendants' motion to dismiss, stated that plaintiffs never received permission from the Court to file the second amended complaint, and plaintiffs had not submitted evidence that defendants provided written consent to its

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

filing. Accordingly, Judge Glasser declined to consider the second amended complaint, and considered only the first amended complaint, in deciding the motion to dismiss. As was the case in Judge Glasser's Memorandum and Order, references to the complaint in this Memorandum Opinion and Order are to the first amended complaint.

*Facts Relating to Plaintiff Ann Reade-Alvarez*

Reade-Alvarez allegedly incurred a debt to Providian, a company in the financial services industry, in the amount of $1,737.03. (Comp.¶ 16). Providian assigned the debt to ECM. EEC, on behalf of its client, ECM, sent a letter dated November 26, 2003 to Reade-Alvarez. (Compl.¶ 18). That letter, in addition to specifying the amount of the debt and the name of the creditor to whom the debt is alledly owed, states as follows:

Please be advised that our firm has been retained by [ ECM], purchaser of the above account, for the collection of this debt.

Please call us to discuss this matter.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

**\*2** This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

Affidavit of Thomas A. Leghorn sworn to on January 20, 2005 ("Leghorn Aff.").

EEC sent Reade-Alvarez a second letter dated December 31, 2003, more than thirty days after the first, stating in relevant part, "[y]ou have ignored our previous correspondence, and therefore, we assume that this is a valid debt and that you have an obligation to pay." (Compl. ¶ 20; Leghorn Aff.). After Reade-Alvarez failed to respond, EEC sent her a third letter dated January 14, 2004, stating in relevant part, "[w]e have attempted on numerous occasions to settle the above debt to no avail. It is imperative that you contact this office as soon as possible to discuss this matter. If we do not hear from you we will have no alternative but to advise our client of your failure to cooperate and request authority to commence legal action against you for the full amount of the outstanding debt." (Compl. ¶ 22; Leghorn Aff.). Among other things, Reade-Alvarez asserts that this letter is "deceptive and misleading in that" it "falsely implies that ... EEC would have no alternative but to request authority from their client ECM to commence legal action against" her, when "[i]n fact, the letter was sent by ECM [on] EEC letterhead." (Compl.¶ 24).

EEC sent Reade-Alvarez a fourth letter dated January 28, 2004, stating in relevant part:

We want to help you clear your credit with our client. To help you do this we take a friendly approach to working out problems. We offer **AFFORD-ABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. ***THIS OFFER IS GOOD FOR 10 DAYS ONLY!*** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS.**

(Compl. ¶ 25; Leghorn Aff.) (emphasis in original). Reade-Alvarez asserts that this letter is, among other things, "false, deceptive and misleading in that [EEC] claims to take a friendly approach to working out problems. In fact, this letter was sent four-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

teen (14) days after the letter defendant ECM had sent threatening to gain authority to commence legal action against the plaintiff ... and 14 days before the letter defendant ECM sent notifying the plaintiff ... that EEC had been authorized to commence legal action." (Compl. ¶ 27; Leghorn Aff.). Reade-Alvarez also asserts that this letter is misleading because it "falsely impl[ies] that [she] may not enter into a payment plan after the ten days have passed" and thus also "create[s][a] false sense of urgency." (Compl.¶¶ 28, 29).

EEC sent Reade-Alvarez a fifth letter, dated February 11, 2004, stating in relevant part, "[o]ur client has authorized us to commence legal action against you to recover the above balance. We would, of course, prefer to resolve the debt without recourse to litigation which is costly and a burden on all concerned. Please contact our office as soon as possible so that we may discuss this matter. If we do not hear from you we can only assume that we have no choice but to bring suit against you for the full balance due." (Compl. ¶ 30; Leghorn Aff.). Reade-Alvarez contends that this letter is "false, deceptive and misleading" because, among other reasons, it "implies that ... EEC has gained authority from ECM to commence legal action" against her when, in fact, "the letter has been sent from ECM and not EEC." (Compl.¶ 32).

### Facts Relating to Plaintiff Ann R. Studen

**\*3** Studen allegedly incurred a debt to Discover, a credit card company, in the amount of $5,879.30. (Compl.¶ 33). Thereafter, Discover assigned the debt to ECM. (*Id.* ¶ 34). In an effort to collect the debt, EEC forwarded a letter dated July 23, 2004 to Studen, which is substantially the same as the first letter sent to Reade-Alvarez. (*Id.* ¶ 35; Leghorn Aff.). More than 30 days later, by letter dated August 27, 2004, EEC forwarded a second letter to Studen, stating in relevant part as follows:

We want to help you clear your credit with our client. To help you do this we take a friendly approach to work out problems. We offer **AFFORDABLE PAYMENT PLANS** and courteous professional service. No matter your experience in the past we are here to resolve this debt now. ***THIS OFFER IS GOOD FOR 10 DAYS ONLY!*** TEN days after the date of this letter our client reserves the right to seek the full amount. **BY ACTING NOW YOU MAY SAVE HUNDREDS OF DOLLARS.**

(Compl. ¶ 37; Leghorn Aff.) (emphasis in original). Studen claims this letter is "deceptive and misleading" because, among other reasons, it "falsely implies that the plaintiff may not enter into a payment plan after the ten days have passed from" August 27, 2004 and therefore "create[s][a] false sense of urgency." (Compl.¶¶ 39, 40).

Plaintiffs allege that all of the above-referenced letters sent to them were "computer generated and w[ere] submitted ... without any meaningful attorney review." (Compl.¶¶ 19, 21, 23, 26, 31, 36, 38). They therefore assert that the letters are "false, deceptive and misleading because the least sophisticated consumer would believe the letter[s], and all documents concerning the alleged debt referenced therein, were reviewed by an attorney prior to" the time when they were mailed. (*Id.*).

ECM, by its attorneys EEC, filed a summons and verified complaint dated August 27, 2004 against Studen in the Civil Court of the City of New York, County of Queens, to recover the debt. (Leghorn Aff.). No attorney signed the complaint. (*Id.*). Studen alleges that no attorney from EEC, including the two individuals identified on the summons and complaint, "generated" these documents. (Compl.¶ 42). The complaint was verified by Carl Fon, assistant secretary of ECM who signed under oath that he read the summons and complaint, knows "the contents thereof and the same are true to [his] knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true." (*Id.*). Mr. Fon's personal knowledge is based on his review of records maintained by ECM. (*Id.*). Studen asserts, however, that a "false implication" exists that Mr.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

Fon executed the verification. (*Id.*).

Plaintiffs do not allege any actual damages; however, they seek statutory damages pursuant to 15 U.S.C. 1692k.[FN2]

> FN2. 15 U.S.C. 1692k(a) provides, in relevant part:
>
> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

*Defendant's Motion to Dismiss*

**\*4** On December 17, 2004, defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). By written Memorandum and Order, dated May 10, 2005, Judge Glasser of this Court granted in part and denied in part the motion to dismiss. Judge Glasser denied defendants' motion to dismiss plaintiffs' claims that defendants violated the FDCPA when they sent plaintiffs computer generated letters which would cause the least sophisticated consumer to believe that the letters were reviewed by an attorney, when, in fact, they were not. Judge Glasser granted defendants' motion to dismiss plaintiffs' claims that the letters created a false sense of urgency and were therefore "false, misleading or deceptive" in violation of the FDCPA. Finally, Judge Glasser denied the individual defendants' motion to dismiss the FDCPA claims against them. Plaintiffs subsequently filed a notice of appeal of that decision with the Court of Appeals.[FN3]

> FN3. The parties have since stipulated to withdraw the appeal without prejudice to its renewal.

*Motion for Preliminary Approval of Class Settlement*

After the parties moved for preliminary approval of the class settlement, I issued a memorandum opinion and order ("Preliminary Approval Order"): (1) certifying a settlement class;[FN4] (2) preliminarily approving the proposed settlement agreement; (3) directing notice to the class;[FN5] and (4) setting dates for optouts, objections, and a hearing pursuant to Federal Rule of Civil Procedure 23(b)(3). Fifteen requests for exclusion, two of which included objections, were received. The fairness hearing was held on July 20, 2006.

> FN4. The settlement class is defined as follows: "All persons who were sent letters by the defendant Eltman, Eltman & Cooper, P.C. at addresses within the State of New York for the period May 27, 2003 (one year prior to the filing of the complaint) to the effective date of the order signed by the Court approving this class settlement through which said defendant attempted to collect from said persons personal debts alleged to be owed Erin Capital

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

Management, LLC."

FN5. The parties initially intended to provide notice to the class using solely newspaper publication; however, I concluded that individual notice to all putative class members was required and denied the motion for preliminary approval on that ground. The parties subsequently agreed to provide individual notice.

## DISCUSSION

Plaintiffs move for final approval of the settlement agreement under Rule 23(e) of the Federal Rules of Civil Procedure, which states that class actions "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed.R.Civ.P. 23(e).

The parties propose the following settlement:

[ T] he Defendant Eltman, Eltman & Cooper, P.C. agrees that attorneys must exercise supervision and control over non-attorney staff in compliance with the FDCPA and state bar ethics rules, and further agrees to adhere to the law of this circuit as most recently set forth in Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360 (2d Cir.2005).

[T]he Defendants will tender $15,000.00 as a Cy Pres payment to the Queens County Legal Aid Society for use defending consumers against lawsuits brought by debt collectors. Statutory damages of $1,000.00 each will be paid to Ann Reade-Alvarez and Ann R. Studen. An additional payment of $1,000.00 will be paid to Ann Reade-Alvarez and Ann R. Studen for their services as class representatives herein. $50,000.00 will be paid to Plaintiffs' counsel, Robert L. Arleo, said amount representing payment for attorney's fees and costs advanced in conjunction with the herein action.

The parties further agree that if more than 10% of the class members decide to opt out of the class, Defendants may revoke the Settlement Agreement.

*Notice*

**\*5** "[N]otices to class members can practicably contain only a limited amount of information." *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982). "Although no rigid standards govern the contents of notice to class members, the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Id.* (internal citations and quotation marks omitted).

In the Preliminary Approval Order, the Court directed the parties to make minor changes to the proposed form of notice, but concluded that the form notice was otherwise adequate. The parties were directed to complete mailing of the notices by June 2, 2006. In response, fifteen persons opted out, of which two individuals objected to the proposed settlement.

*Substantive and Procedural Fairness*

"The central question raised by [a] proposed settlement of a class action is whether the compromise is fair, reasonable, and adequate. *Weinberger,* 698 F.2d at 73. To determine whether this standard has been met, the court must "compare the terms of the compromise with the likely rewards of litigation." *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 741 (S.D.N .Y.1985) (citations omitted). In evaluating the substantive fairness of a proposed settlement, the Court is guided by the nine factors initially enumerated in *City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir.1974):

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir.2001) (citations omitted); see also In re Gulf Oil/Cities Service Tender Offer Litigation, 142 F.R.D. 588, 590 (S.D.N.Y.1992)(applying Grinnell factors); In re Warner Communications, 618 F.Supp. at 740-741(same). The court must also examine the negotiating process that gave rise to the settlement to determine if it was achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests. *See id.* at 741; see also D'Amato, 236 F.3d at 85 ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

### 1) The complexity, expense and likely duration of the litigation

As the Court noted in its preliminary approval of the proposed settlement, the litigation poses a series of complex logistical problems that will likely be expensive to manage through trial, given that the class is so large and diffuse. Defendants have already moved to dismiss the case; if the case does not settle, protracted discovery and litigation will likely ensue. Accordingly, this factor weighs in favor of approving the settlement.

### 2) The reaction of the class to the settlement

**\*6** Class action notices were mailed to more than 40,000 individuals. In response, fifteen individuals requested exclusion from the class,[FN6] and of those, only two stated objections to the settlement. One member at the fairness hearing also objected on the grounds that the settlement notice was not

clear. This small number of objectors favors approval. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 86-87 (2d Cir.2001) (where 18 objections received out of 27,883 class notices weighed in favor of settlement); *see also In re Visa Check/ Mastermoney Antitrust Litig.,* 297 F.Supp.2d 503, 511 (E.D.N.Y.2003) ("the extremely small number of objectors ... heavily favors approval"); In re Mexico Money Transfer Litigation (Western Union and Valuta) 164 F.Supp.2d 1002, 1021 (N.D.Ill.2000) (99.9% of class members having neither opted out nor filed objections indicated strong circumstantial evidence in favor of the similar settlement proposal.)

> FN6. Written requests for exclusion were received from the following class members: Sola Iroko, Peter J. Zito, Robert S. Mendenhall, Gwen Irizarry, Vivian de los Santos, Susan Spinosa, Kevon L. Chisholm, Joyce McElwee, Keiko Arakawa, Eros A. Pheonix, Johnny Cummings, Louis Fuldman, Callista Bessellieu, John Guerriere, and Robert Forrest. In addition, at the fairness hearing, the following individuals indicated that they wished to be excluded: Mr. Zhoxha, Marilyn Pinckney, and Tusiant Venande.

### 3) The stage of the proceedings and the amount of discovery completed

The stage of the proceedings and the amount of discovery the parties have conducted is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Painewebber Ltd. Pshps. Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y., 1997). As the docket for this case reveals, since defendant's motion to dismiss was decided on May 10, 2005, the parties have engaged in extensive discovery and had several discovery disputes. Discovery was scheduled to be completed on January 30, 2006; however, counsel for plaintiffs informed the court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

on January 18, 2006 that the parties had reached a settlement. Because the parties engaged in extensive discovery and because discovery was near completion when the parties reached a settlement, this factor weighs in favor of approving the settlement.

### 4) The risks of establishing liability and (5) The risks of establishing damages

"In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Medical X-Ray,* 1998 U.S. Dist. LEXIS 14888, at *11 (E.D.N.Y.1998). Although risks associated with establishing damages in this case are low, since plaintiffs are only seeking statutory damages, the risks associated with establishing liability are real. In this case, defendant has already prevailed as to some of plaintiffs' claims, and it is possible that the remaining claims would also be dismissed on motions for summary judgment or at trial. Moreover, as explained below, given the small amount of damages available in this type of case, the benefits of immediate recovery outweigh the risks associated with future litigation.

### 6) The risks of maintaining the class action through the trial

The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification. *See In re Medical X-Ray,* 1998 U.S. Dist. LEXIS 14888, at *14 (possibility that defendants would challenge maintenance of class in absence of settlement was considered risk to the class and potential recovery). Furthermore, this Court has noted litigation will likely be expensive to manage, and is logistically complex. Accordingly, this factor weighs in favor of approving the settlement.

### 7) The ability of the defendants to withstand a greater judgment

*7 No argument is advanced that defendants cannot withstand greater judgment; however, as explained below, the amount of damages available under the present claim is relatively low. Accordingly, this factor neither supports nor weighs against the proposed settlement.

### 8) The range of reasonableness of the settlement fund in light of the best possible recovery and 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation

15 U.S.C. 1692k(a) provides, in relevant part:

[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of ... (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector....

As I noted at the preliminary approval stage, defendants have agreed to furnish a cy pres payment of $15,000 as the portion of the settlement payable to the class. Were the case to proceed to trial, the distribution to the class could not exceed $10,000, representing 1% of EEC's net worth of $1,000,000. With a class of over 45,000 persons, this recovery would be de minimus. [FN7]

> FN7. Cy pres remedies are typically sought in the trust context. Specifically, "where the funds in a charitable trust can no longer be devoted to the purpose for which the trust was created, they may be diverted to a related purpose." *Mirsafihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 784 (7th

Page 8

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

Cir.2004). However, in class actions, cy pres payments may be made "to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement ... to the class members." *Id. See also Six (6) Mexican Mine Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir.1990) (noting that "[f]ederal courts have frequently approved [the cy pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or the distribution of damages costly"); *In Re Agent Orange Product Liability Litigation,* 818 F.2d 179, 185 (2d Cir.1987) (noting the availability of cy pres remedies or "fluid class recovery" where individual payment to class members would otherwise be unmanageable).

In light of the risks of litigation and the best possible recovery in this case, I find the settlement to be reasonable.[FN8]

FN8. Many courts have concluded that injunctive relief is not available to private litigants under the FDCPA. *See, e.g., Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303, 312 (D .Conn. Apr. 8, 2004); *In re Risk Management Alternatives, Inc.,* 208 F.R.D. 493, 503 (S.D.N.Y. Jun. 14, 2002); *Sokolski v. Trans Union Corp.,* 178 F.R.D. 292, 299 (E.D.N.Y. Mar. 24, 1998); *see also Weiss v. Regal Collections,* 385 F.3d 337, 342 (3d Cir.2004); *Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830, 834 (11th Cir.1982) ("Indeed, equitable relief is not available to an individual under the civil liability section of the Act."). Thus, the proposed settlement provision that EEC attorneys exercise supervision over non-attorney staff in compliance with the FDCPA and state bar ethics rules affords the class members more than they could have obtained under the FDCPA. Such an outcome supports the reasonableness of the proposed settlement.

*10) Arms-Length Negotiations*

In the Preliminary Approval Order, the Court concluded that the Settlement Agreement was both substantively and procedurally fair. "It is not for this Court to substitute its judgment as to a proper settlement for that of such competent counsel in view of the fairness of the settlement to the class members." *In re Warner Communications Sec. Litig.,* 618 F.Supp. at 746. The proposed settlement does not appear to be collusive, taking into account the lengthy and detailed negotiations that the parties have undertaken. The parties have not only litigated a motion to dismiss and engaged in discovery disputes, but as explained below, the parties have also disagreed over the terms of the settlement agreement. Accordingly, I find that the parties have engaged in "arms-length negotiations."

*Objections to the Proposed Settlement*

As stated above, of the over 40,000 class members that were sent settlement notices, only two, John Guerriere and Robert Forrest, submitted objections in writing. Both also chose to exclude themselves from the class. Their objections are addressed below.

*Objections Regarding Attorney's Fees*

Both Guerriere and Forrest object to the settlement on the grounds that it unfairly compensates plaintiffs' attorney and the class representatives to the detriment of the class. The attorney's fees proposed in the settlement agreement is $50,000. "Attorney's fees included in a class action settlement are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally 'fair, adequate, and reas-

Page 9

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

onable' " *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir.2002) (quoting Fed. R. Civ. Proc. 23(e)); *see also U.S. Trust Co. of New York v. Shapiro,* 835 F.2d 1007, 1009 (2d Cir.1987); *In re Johns-Manville Corp.,* 2004 WL 1876046, at *37 (S.D.N.Y. Aug. 17, 2004).FN9 "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id. See also Prandini v. National Tea Co.,* 557 F.2d 1015, 1020 (3d Cir.1977) (noting that "a defendant is interested only in disposing of the total claim asserted against it ... the allocation between the class payment and the attorney's fees is of little or no interest to the defense...."); *Charles v. Goodyear Tire & Rubber Co.,* 976 F.Supp. 321, 323 (D.N.J. Sept. 5, 1997) (stating that "even when the parties have agreed on an attorneys' fee award, the danger exists that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees."). Scrutiny is particularly important where the proposed attorney's fee is substantially greater than the proposed class settlement or where the class settlement is non-pecuniary. *See Polar International Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 119 (S.D.N.Y. May 17, 1999).FN10

> FN9. Class counsel must apply to the court for an award of attorney's fees after approval of the settlement. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1046 (9th Cir.2002). In this case, however, because attorney's fees form part of the settlement agreement itself, I consider the proposed attorney's fee along with the rest of the agreement. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9 Cir.1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.... The settlement must stand or fall in its entirety."); *see also see also U.S. Trust Co. of New York,* 835 F.2d at 1009 (remanding to

district court to determine whether attorney fee in settlement was fair and reasonable under Rule 23(e)); *In re Johns-Manville Corp.,* 2004 WL 1876046, at *37 (reviewing fairness and reasonableness of attorney's fees as part of settlement agreement).

> FN10. In that case, the district court observed that

>> [t]hrough the use of a non-pecuniary settlement coupled with an application for attorney's fees, defendants benefit by receiving release from suit, plaintiff's counsel benefits in the most tangible form-cash-and unless the non-monetary settlement offers something of real value to class members, they have relinquished their legal rights to maintain a suit in exchange for very little.

> *Polar,* 187 F.R.D. at 119.

**\*8** In this case, while the attorney's fee substantially exceeds the cy pres payment award to the class, the class members have not been disadvantaged by the attorney or representatives receiving compensation, because, as stated above, the class as a whole in any event could only receive $10,000 under the statute. Courts have consistently upheld class action settlements notwithstanding differences in the economic interests of class counsel and class members. *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1078-79 (2d Cir.1995) (disparity in compensation between class counsel and class members exists "without any conflict of interest in many class actions"); *In re Mexico Money Transfer,* 164 F.Supp.2d at 1033 (no conflict where attorney fees negotiated separately and compensation to class members is significant).

In determining a reasonable fee, the Supreme Court has held that the "most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hens-*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

ley v. Eckerhart, 461 U.S. 424, 433 (1983); *see also Blum v. Stenson,* 465 U.S. 886, 888 (1984). This approach is known as the lodestar method. *In re Sterling Foster & Co., Inc.,* 2006 WL 3193744, at *7 (E.D.N.Y. Oct. 31, 2006); *see also Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir.2000); *Savoie v. Merchants Bank,* 166 F.3d 456, 460 (2d Cir.1999). If the attorney's proposed fee is greater than the lodestar, he has "the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.' " *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (citing *Blum v. Stenson,* 468 U.S. 886, 898 (1984)) (emphasis in original). In its discretion, the court may then apply a multiplier based on other factors such as "(1) the time expended and expertise of counsel, (2) the magnitude and complexities of the litigation, (3) the risks involved in the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, (6) and public policy considerations." *In re Sterling Foster* at *7; *see also Savoie,* 166 F.3d at 460 (identifying multiplier factors such as risk of litigation, complexity of the issues, and skill of attorneys); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir.1974) (identifying similar factors).[FN11] "What constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Goldberger,* 209 F.3d at 47.

> FN11. Courts may also employ a "percentage of the fund" approach, in which "the courts sets some percentage of the recovery as the fee." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir.2000) (holding that "both the lodestar and the percentage of the fund are available to district courts in calculating attorneys' fees in common fund cases"). In this approach, courts consider the same additional multiplier factors as they do under the lodestar approach. *Id.* I adopt the lodestar approach in this case because, after crosschecking all possible percentages of the fund with the amount the attorney

would receive under a reasonable hourly rate (as he would receive under the lodestar method), I find that the disparity would be unreasonably large. *See Goldberger,* 209 F.3d at 50 (when considering percentage approach, recommending crosschecking reasonableness of requested percentage with documentation of hours worked), *cited in In Re Sterling Foster & Co., Inc.,* 2006 WL 3193744, at *7; *see also Savoie,* 166 F.3d at 461 (affirming use of lodestar approach because "percentage-of-the-fund method would have accomplished none of its anticipated benefits").

The first consideration is whether the time spent on the litigation and the proposed hourly rates are reasonable. Counsel has submitted detailed time records showing that he expended approximately 132 hours on this litigation. These records establish that much of his time was spent preparing and filing motion papers, communicating with other counsel about settlement, and participating in hearings in the Eastern District of New York. Counsel also personally communicated with more than 100 class members, many of whom are not fluent in English, explaining the litigation and settlement of this case and addressing members' questions regarding their underlying debts that had been purchased by defendant Erin Capital Management. Given the range of activity required by this case, I conclude that counsel expended a reasonable number of hours on the litigation.

**\*9** In determining a reasonable hourly rate, the court considers the attorney's "normal billing rate," *Lindy Brothers Builders, Inc.,* 487 F.2d at 167, as well as his "legal representation and status (partner, associate)." *Id.* Counsel billed his hours at a rate of $420 per hour, amounting to a total bill of $55,398 for time worked. In addition, he has advanced $725.49 in costs. Counsel states in his Affirmation that he has previously billed $420 per hour for his legal services. He has over 15 years experience lit-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

igating FDCPA matters and teaches the FDCPA as an Adjunct Professor of Law at Thomas Jefferson Law School, an A.B.A. approved law school in San Diego, California. Given these circumstances, an hourly rate of $420 is reasonable. The lodestar would thus equate to counsel's total bill of $55,398. Because the proposed fee of $50,000 is actually lower than the lodestar, that proposed amount is justifiable. Since the proposed fee does not exceed the lodestar, I need not address the additional multiplier factors that might justify an upward adjustment.

*Objections Regarding Class Representatives*

With respect to the objection that the class representatives are receiving an award to the detriment of other class members, I note that courts have approved such awards "to compensate named plaintiffs for the risk they have incurred by pursuing the class action and the extra effort they have expended." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* 94-CV-5587, 2003 U.S. Dist. LEXIS 8239, at *7, (S.D.N.Y. May 15, 2003). In another case, plaintiffs cited a study that found the average payment between $1,000 and $5,000. *Shepard et al. v. Consolidated Edison Co. of New* York, 94-CV-0403, 2002 U.S. Dist. LEXIS 16314, at *22, n. 10 (E.D.N.Y. August 1, 2002). The Court noted that:

Courts in this circuit generally make these awards based upon 'the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by the plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.'

*Id.* at *16-17 (citing *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 200 (S.D.N.Y.1997)). Here, the class

representatives are to receive $1000 each for their services. Considering this case is over two years old, I find that this compensation is not excessive.

Robert Forrest also objects to the settlement because the class representatives do not adequately represent his interests. He states that defendant Erin Capital Management has instituted legal proceedings against him, whereas there is no indication that the class representatives have experienced the same. I note that Forrest's objection can be cured by opting out of the settlement, which Forrest has done. Accordingly, this objection does not weigh against approval.

**\*10** Finally, and most importantly, Forrest objects to the release contained in the settlement agreement as being overbroad. The release states:

The named Plaintiffs and each of the class members not opting out shall, as of the Effective Date, be deemed to release and discharge forever Defendants and its [sic] heirs, the current and former officers, directors, successors, predecessors, executors, administrators, assigns, shareholders, affiliated companies, and employees ("Released Parties"), from all claims, controversies, actions, causes of actions, demands, torts, damages, costs, attorneys' fees, moneys due on account, obligations, judgements, alleged violations of the Fair Debt Collection Practices Act, 15 U.S .C. section 1692 et. seq. or liabilities of any kind whatsoever in law or equity, arising out of agreement or imposed by federal or state statute, common law or otherwise, from the beginning of time to the date this Agreement is signed, whether or not known now, anticipated, suspected or claimed, fixed or contingent, whether yet accrued or not and whether damage has resulted from such or not. This release is conditioned upon the performance by Defendants of their obligations towards the class members set forth in this settlement agreement.

Plaintiff responds that the release "should be modified to indicate that the settlement agreement is limited only to claims and defenses related to allega-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)
**(Cite as: 2006 WL 3681138 (E.D.N.Y.))**

tions of violation of the Fair Debt Collection Practices Act (FDCPA) as set forth in the amended complaint herein." Defendants object to plaintiff's proposed modification, stating, "if the release is modified such that the release pertains only to claims brought pursuant to FDCPA, the defendants face the possibility of exposing themselves to a myriad of different state law claims."

I conclude that modification of the release is warranted; however, the modification warranted is not that which plaintiff proposes. Courts have routinely held that releases in class action lawsuits can be worded so that class members are prevented from bringing subsequent suits based on legal theories different from those in the class action complaint; however, only claims based on "identical factual predicate" may be released. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 107 (2d Cir.2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct"); *National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9, 18 n. 7 (2d Cir.1981) ("settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts"); *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982) ("We therefore conclude that in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action").

**\*11** Defendant is therefore correct that the release need not be modified to be limited to FDCPA claims; however, the release must be modified to be limited to claims involving "identical factual predicate." The release as it is currently worded does not contain this necessary limit. Accordingly, the settlement can only be approved subject to the parties' modification of the release.

CONCLUSION

The settlement is approved provided the parties consent in writing to the modification of the settlement on or before January 5, 2007. Following the submission of such consent, the parties shall settle a final order on five (5) days notice.

The Clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.

SO ORDERED.

E.D.N.Y.,2006.
Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.
Not Reported in F.Supp.2d, 2006 WL 3681138 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.